Please call the next case for argument. Yes. The second case for argument is 22-1685 from the District of Southern Iowa. Derek Westwater v. Kevin Church Please call the next case for argument. May it please the Court. Counsel, the Court appreciates your accepting the civil appointment to represent Mr. Westwater. Happy to help out, Your Honor. This appeal is about the appropriate standard to be applied in a motion for summary judgment when there are multiple disputed facts. In the materials submitted in litigation below, which are available to this Court in the joint appendix, Mr. Westwater told one story and Captain Church told another. Mr. Westwater told the Court that he was complying, albeit slowly, there may have been some passive resistance, with an order to get out of the back of a squad car and to go into the jail. He was handcuffed behind his back and as he got out of the car, as he was awkwardly standing out of the car, Captain Church began to strike him without provocation on the back of the head. Now, Captain Church tells a very different story. He tells a story that in the car ride to the jail that there were threats exchanged and that as Mr. Westwater was standing, he threatened to, quote, fucking headbutt you. Now, in that version of the events, some level of force would be justified by Captain Church to prevent injury to himself. And even under Mr. Westwater's version of the events, certainly some force, such as pulling him outside of the car and walking him into the police station, could have been justified. But what the parties agree on was that there was at least one blow, possibly more, to the back of the neck to cause pain compliance. Under the totality of the circumstances test that this court applies to determine whether there was excessive force, this was not justified. And crediting Westwater's versions of the events, summary judgment should not have been granted. This should have gone to the jury. Now, the district court below did not expressly state that it was discounting Westwater's story. It couldn't do so under the motion for summary judgment standards. But a careful look at its analysis suggests that the only way to rule as it did would be to discard Westwater's story. The cases that the court relies upon in finding that this force was not excessive and that Captain Church was entitled to qualified immunity are too factually dissimilar to Mr. Westwater's version of the events to provide reliable precedent for resolving this issue. The Eighth Circuit's case law on excessive force is clear. If someone is struggling and trying to avoid being handcuffed, if someone is trying to get out of their handcuffs or flee, pain compliance is allowed to get those handcuffs on, to protect the officers,  We see that in Brossart v. Jackie, a case where the suspect was tased repeatedly prior to being handcuffed while he was unsecured and refusing to get on the ground as ordered. We see that in Carpenter v. Gage, where the suspect refused to submit to authority, physically threatened EMTs and officers with a baseball bat on camera, and was tased while he was still moving through the house and tased again while he was refusing to give his hands for cuffing. In Cohorse v. Smith, a case where the suspect was tased before he was cuffed, the suspect continued to thrash in the back of the squad car. He got one leg in between his cuffed hands, so he was sort of straddling the handcuffs, and he refused to get out of the back of the squad car so that officers could fix his handcuffs, requiring the officers to pull him out so that they could fix his handcuffs. None of these circumstances involved excessive force, and in Shelton v. Stevens and Baker v. Clements, again, we have two suspects who were not giving up their hands for cuffing when this court held that closed fist blows to their body for claim compliance was justified to protect the officer's safety because the inmate was not yet subdued. Now, Mr. Westwater started his interaction with law enforcement in a way that at least initially would have justified some use of force. He freely admits that he should not have fled from Officer Baum and that the officers were right to later handcuff him. However, you have to look at when he stopped fleeing, when he stopped fighting, and when he began to comply with law enforcement. Who decides whether there was objectively reasonable perception of a threat? Who decides that and when, in your view? That would be based on the undisputed facts at summary judgment stage, but the issue in this case... No, no, you're saying, you just said there's these multiple facts and the district court couldn't have done what it did without disregarding the plaintiff's side. Okay, the ultimate test... Yes, Your Honor, it's from the... It's from the perspective of a reasonable officer. That didn't answer either of my questions. I apologize, Your Honor. Who decides it and when? The amount of force that is appropriate is decided from the perspective... No, no, the need for force. Whether there was an objectively reasonable perception of an imminent headbutt, for example. That's based under the totality of the circumstances. Who decides it and when? From the perspective... I apologize, Your Honor. It's my understanding that it's from... It's not a jury question, right? Correct. That would be part of the qualified immunity analysis. Yes. Yes. Which is a question of law for the court before, during, and after a trial. Yes, Your Honor. What you want a trial on is never going to be decided by a jury, right? This is not an easy question. This is a constant frustrating aspect of excessive force qualified immunity cases. Absolutely, Your Honor. The issue is that qualified immunity cannot... a mini-trial with or without a jury. Was that requested? Your Honor, under this court's precedent, qualified immunity cannot be granted when there is disputed facts, which there were in this case. Yes, but if it's denied for that reason and there's a trial, that means at the end of the trial, before anything is submitted to the jury, the district court has to decide it. Yes, Your Honor. Or waste the jury's time, right? I suppose so, Your Honor. I think that's pretty... Well, it's not... Nobody wants to talk about it very often because it's what nobody wants to do, which is to have a trial. But you can have... When you have a threshold question of law which has disputed relevant material facts, you can have a mini-trial. Rule 12B1 type. You do it all the time for personal jurisdiction, for example. Yes, Your Honor. There was no hearing on the motion for summary judgment. It was decided on the paper. However, Mr. Westwater was deposed by opposing counsel. He gave testimony under oath subject to extensive questioning. And there were depositions of the other officers as well. But the district court said there was an array of factors here that in the court's view justified, if not in a conclusion that was an objectively perceived risk of physical harm from Mr. Westwater, at least nothing clearly established to the contrary. That starts with the flight. It starts with his knowledge of the prior assault. It includes what he said was said in the car. And I read Mr. Westwater's deposition. And it was... He never denied anything. He said, well, that's not quite what was said. He had that kind of response. So your clear dispute is quite less than that. And why can't the district court, at least under the clearly established prong of our many excessive force cases, which are hard to reconcile because they're all fact-intensive. It seems to me that's our question. And maybe that's a problem with qualified immunity as it currently exists. A lot of people think so. Yes, that goes possibly beyond the scope of this appeal. But that is a problem with qualified immunity analysis is that we take these issues away from the jury, away from the credibility determinations that need to be made. Because from the cold record, whether you believe Mr. Westwater or Mr. Church might be very different from a live viewing of this evidence. Let me jump to the clearly established side of it. And a lot of it's amazing how many of our cases that get cited in the briefs were tasing cases. And a taser is a, it can be lethal. It's a different level of force inherently. So what are your best cases, non-taser cases, for the proposition that this was not a clearly established, that this claim of excessive force is not clearly established? The case that is most on point for what happened with Mr. Westwater is Blazick v. City of Iowa City. Mr. Blazick was a suspect in a home that was being investigated pursuant to, I believe, a probation check. And he, like Mr. Westwater, was initially fairly uncompliant. He refused to comply with requests to identify himself, to remain where he was. Ultimately, he did have to be handcuffed for officer safety. However, at that point, he was subdued. I think Blazick stands for the clear proposition that what happened before in an altercation isn't necessarily continuing to happen for the rest of the altercation and that the court should subdivide and look at the totality of the circumstances at the time that the force was used. Now, Blazick states that you can use some force on someone who's in handcuffs. You can direct them where they need to go. You can get them to do what you need them to do, but it has to be proportional. And in Blazick, where he was roughly jerked off the bed and then slammed to the ground for no apparent justification, this court held that it was objectively unreasonable. It seems to me, and I think you were going in this direction, that the key here is what does the record show at the moment? We know he hesitated. He waited 30 seconds or so to start moving out of the car. What does the record show once he started to get up? What's the officer testifying and what's he testifying to? I mean, was he asked, did you move toward a headbutt? Did you react quickly as if you were going to flee? What exactly is in the record about that one or two seconds before he starts getting punched? Yes, Your Honor. Mr. Westwater's testimony was that he was standing up. He might have said something to the effect of I can walk, but he did not threaten to headbutt and that he did not intend to headbutt Mr. Church. So he denied? He denied that intent. Mr. Church's testimony was, again, that Mr. Westwater said something to him. Not just intent, because I don't know that what's in his brain matters that much. I think what matters is did he make a movement? Did he attempt to run? Did he move his head like that? His testimony was that he was getting out of the back of the squad car. His hands were handcuffed behind him. He testified that this was an awkward endeavor. He got both of his feet on the ground and he began to stand up and that his head was below the level of Mr. Church's head at the time that he was struck. And then Captain Church's testimony was that he threatened to headbutt him. And Captain Church attempted to grab him to prevent that from happening and then began to apply blows during the struggle. What did the officer say about this? I know he had earlier threatened to, orally threatened to headbutt him. What was the threat? Did he move his head in a certain way or what was the evidence about that? I believe the officer testified that it was a little bit of both, that he orally stated, I'm going to headbutt you. Earlier though? I believe he stated that as he was getting out of the car. Okay. And that the motion of getting out of the car, which he deemed to be somewhat abrupt. I read the testimony as saying that once he was on his feet, the officer saw Westwater lean his head back in a budding, a position that looked like budding. I believe that's consistent with what he said. Imminent budding, let's put it that way. I believe he did testify to something of that effect. Your Honors, with your permission, I'll save my remaining time for rebuttal. Thank you. Thank you. Good morning, Your Honor. May it please the Court, Attorney Donalds, my name is Dan Morgan. On behalf of Captain Kevin Church, I respectfully request that this Court affirm the District Court's order in this matter. Pursuant to the well-known summary judgment standard, the District Court judge interpreted all relevant and supported facts in favor of the plaintiff in coming to the conclusion that Captain Church was entitled to summary judgment on two grounds. The first of those grounds is that the Court found that Captain Church's actions on May 1, 2018 were objectively reasonable under the Fourth Amendment. In her order, the District Court judge reiterated the standard that you're all very familiar with, that the question of objective reasonableness must be evaluated on the totality of the circumstances and considered more specifically in the context of each individual incident. So, to highlight those real briefly, the facts and circumstances supporting objective reasonableness in this case are as follows. In 2015, Mr. Westwater violently assaulted Keokuk Police Officer Greg Himes. And Mr. Westwater's own words... Counsel, that would... Yes, Judge. That would make it reasonable to be alert or to be cautious, but it would be... Why would it be objectively reasonable to hit someone closed fist five times on the back of the head or neck because of something that happened two years earlier? Well, to your point, Judge, you mentioned that it would put an officer, a reasonable officer, on notice that this individual may pose a threat, which might ultimately elevate your, you know, concern what this inmate or, excuse me, inmate,  And this actually came up in Mann v. Yarnell, where this court said that an officer's prior knowledge of an assaultive suspect might raise their level of caution and might cause them to appropriately apply force at even the more lower level of resistance. So, what are the facts? You were going through the facts. What are the facts here that would make it reasonably objective to hit him on the back of the head five times? Sure. So, the strike on the back of the head, Judge, is a pain technique that's used in law enforcement. It's primarily aimed for the back of the neck and the shoulders. Obviously, in a struggle, it's not always easy to hit there, but the goal is that it will cause pain. Well, there's no testimony that there's a struggle. The testimony is that he thought he might headbutt him. So, the other facts, Judge, beyond the prior assault, which Captain Church said raised his concern about Mr. Westwater, is also that Mr. Captain... Excuse me, Captain Church was aware that Mr. Westwater had just fled from law enforcement approximately 30 minutes or so prior. He fled into the woods for about 10 minutes, disobeyed officers' commands to stop and submit to arrest. Additionally, once they arrived at the police station, Mr. Westwater failed to respond to Officer Church's commands for approximately 30 to 45 seconds, which is quite a long time if I were to sit here in silence for that amount of time, you might wonder. But I think you have the undisputed facts here that he was being passively resistant. That would be correct, Your Honor. I think that's a good summary. Under our case law, some force can be used. You could drag him out of the car, for example. Yes, Judge. What would make it objectively reasonable to hit him five times? Well, two other facts I also want to bring to the Court's attention were that Captain Church was alone at the time when they got out of the car. There were no other officers around. Counsel, I watched the video, and I guess I'd like to know whether you're still standing by that argument because within 10 seconds there was a second person, within 15 seconds there was a third person, and by the time he stood up to get out of the car, which was the time when the blows were allegedly struck, there were seven people surrounding the open car door. So you're saying to this Court that he was alone? I was saying, Judge, that he was alone in those brief, tense and uncertain circumstances of coming out of the car. Not during the time when the blows were struck. Okay. Well, I guess my memory is... What relevance is it that he was alone prior to the incident? Don't we have to look at what happened at the time the force was applied? Yes, Judge, you do. And if my recollection is incorrect... But he was not alone. There were seven people there. Well, at least a couple of those, Your Honor, were firefighters who were obviously not trained in law enforcement tactics like they would be. However, it would have been difficult for any officer to get into that immediate space between the door and the officer and where Mr. Westwater was standing. However, as you point out, Judge, he was not completely alone. However, he needed the force to keep him from fleeing. Mr. Westwater is a flight risk. That was pretty well established by the record and had his previously assaulted officers. So why was five blows acceptable versus others? Five blows was the force necessary to end the threat in Captain Church's belief. By the time at that point, other officers could aid in assisting to get him secured. So the threat of a headbutt that hadn't happened yet justified five blows to the neck. In this case, that was the force that Captain Church reasonably believed was necessary to keep him from fleeing or from headbutting him. How could he flee with seven people surrounding the door? And he was handcuffed with his hands behind his back. Well, I would assert, Your Honor, that being handcuffed doesn't necessarily keep someone from fleeing. If he'd been able to create space between Captain Church, he certainly could have ran off. The issue is reasonableness. So you're saying it's reasonable to believe that he was fleeing with seven people surrounding him and his hands cuffed. I believe it's certainly reasonable for him to make an attempt to flee. Now, possibly he may not have gotten very far. That's fair. But I do believe that it's possible that Mr. Westwater could have created space. So he could preemptively assault him with five blows because he might escape. If the officer believed that he was about to be headbutt, the law does not require him to wait to be headbutt to apply force. Didn't he testify, the officer now, that he thought Westwater was just trying to get away and go across the parking lot to create a situation as opposed to really escape, and he wanted to prevent that. And I thought that was kind of, if I read it right, I thought that was kind of peculiar reasoning. Yes, Judge, that is the testimony that Captain Church gave was that he was trying to create space to possibly flee or create a fight. That's something that Mr. Westwater has done previously, and actually had done with Officer Baum during the initial arrest. Initially, it looked like there was maybe going to be an altercation before fleeing their arrest. So, judges, I just want to point out again that the district court, there's nothing in the district court record that indicates that the judge made a credibility assessment or anything to those regards. She looked at the objective facts that were in front of her based on the record and made an objective reasonableness determination based on that record. If we're to assume that a credibility determination was made, that's exactly what we'd be doing. We'd be having to assume what the district court judge did without any evidence in the record of her doing so, which I believe is quite frankly problematic if we're going to go down that route. With respect to if Captain Church's judge grabs back to your point about was it reasonable for him to use five strikes, the district court credited that it was five strikes. There's obviously some debate about how many there were. The district court, for the purpose of the summary judgment, said there were five. Even if, under the case law here in the Eighth Circuit, that even if Captain Church's perception was incorrect, as long as the force generally was reasonable, then a mistaken perception can still be lawful under the Fourth Amendment. Even if Mr. Westwater was not planning to flee and perhaps was adjusting himself as getting out of the car, if an objectively reasonable officer in Captain Church's position, based off of the totality of the circumstances, believed that that individual was trying to create space or attempting to assault them, then a reasonable force would be okay even if that perception was mistaken. Our case law says that some force is reasonable. How do we assess whether this was some force? That's a difficult question, Your Honor. There's never been a set opinion that says, in X scenario, this amount of force is reasonable. Certainly we have quantums. If deadly force can be met with deadly force, we're aware of that. That would go to the clearly established analysis, wouldn't it? Yes, it would, Your Honor. That would go to the qualified immunity analysis. That has been brought up. With qualified immunity, as this Court is aware, it has to be clearly established, as you pointed out, Judge Gras. There's really nothing here in the record that would have put Captain Church on notice that he was violating Mr. Westwater's rights. There are certainly close cases. Mr. Westwater has referenced the Blasek case. But Blasek is different for some important points. This is why I brought these up earlier. In Blasek, there was no indication that Mr. Blasek ever attempted to flee the Iowa City Police Department. There was certainly maybe some jawjacking and that kind of thing, but there's no indication that he ever tried to flee officer's custody. There's also no indication that Iowa City police officers were aware that Mr. Blasek had previously assaulted law enforcement or generally was a combative suspect. I think those are really important facts, Judge. Another important fact, too, was that they were in a much smaller environment. Yes, there may have been other officers or other personnel in the Keokuk Police Department parking lot, but it was also unsecured. So maybe he could have got past seven people, maybe he could not. But in this case of Blasek, they were in a small room, which much overall helps the officer's ability to apprehend and to secure the suspect when there are several officers in a much smaller room versus a wide open parking lot. The video doesn't show what happened at the key moment, right? Regrettably, yes, Your Honor. Right. In case it might be a little easier then. But aren't we really faced with a situation where Mr. Westwater says, I was totally compliant, I was just getting out of the car, and your client says he was threatening and was going to headbutt me. I'm not sure he, you know, maybe he says he leaned back or something like that. But doesn't that create a fact question that, you know, I mean, you're right. We do have a lot of things that he should have been concerned about prior. But if he's fully compliant at that moment, which is his testimony, don't we have a fact question that the jury has to decide? I would say that this Court has said a couple times that a self-serving statement that's unsupported or unsubstantiated does not necessarily create a fact question. And in this case, we just have Mr. Westwater saying, I was fully compliant and nothing more than that. Yeah, but the same is true on the other side, right? Sure. Sure. I mean, he certainly is, his testimony is evidence. Maybe self-serving, but so is your client's. I don't think that works. Okay. So I think, Judge, in this case, we have to, again, really focus down on what would an objectively reasonable officer in those exact circumstances would feel or look at in making the decision to strike Mr. Westwater. I think that's really what we have to focus down on. So if he says he was fully compliant, I think as Judge Graves pointed out, he was at least, at a minimum, passively non-compliant in the fact that he sat in the car and waited for 30 to 45 seconds. That might have justified going in and yanking him out. But again, at the key second where he's getting punched in the back of the neck, that's a different story. He's saying he's compliant. Your client says he's not. He's fleeing or he's moving toward headbutting me. It seems to me a jury's got to decide that. Well, I guess then, Judge, the question probably becomes a measure of quantum, if you will. How many objectively reasonable facts up to that point, would it make it objectively reasonable, as the district court judge decided, or do you need some more? And maybe we do. And in that case, then that might be a fact question. But so far, to my knowledge, this Court's not come to a say, well, we have to have five objective facts, six objective facts, et cetera, to reach that conclusion. So, Judges, just with the brief amount of time that I'm coming down here, I just want to highlight, as we've already discussed about the objective facts, so I don't think I necessarily need to go through those again. However, Judge, I do want to point out real quickly that there's a real important case with objective reasonable analysis that I want to point your attention to, and that's Wordish v. Krugner, which involved officers pursuing a pickup truck that was driving erratically. Once the pursuit ended, the suspect refused to open the truck door, despite numerous officer commands to do so. Officers then forcibly pulled the suspect from the vehicle and used at least one strike to the suspect's head and ribs to gain control of the suspect for handcuffing. The suspect then later complained of suffering sore shoulder and lacerations. Counsel, I hear the suspect was already handcuffed, so I'm not sure that case helps us. Okay, well, I do believe that there's at least still some facts that would help guide this Court's analysis, and that is that the plaintiff led the officers on a chase, which was true in this case, failed to comply with numerous commands to pull over, and so there's at least failure to comply with officer commands. The officers had probable cause to stop the plaintiff. This case initiated on a warrant for arrest, so certainly there was probable cause to arrest Mr. Westwater. And once the chase concluded, the plaintiff still failed to exit the vehicle. You're correct, Judge, that in Wordish, the suspect was not handcuffed until he was ultimately pulled from the vehicle, but the facts leading up to that standpoint are very similar. And although it's not necessarily mentioned in the district court judge's order, it is part of the record in this case, and it was a factor in Wordish where this Court decided that it was a relatively close case, but they also looked at the level of injuries that Mr. Wordish had sustained, and they said that they were minor scrapes and bruises and they were so de minimis, which also supported the conclusion that excessive force was not used. And so I just wanted to bring that to this Court's attention. So at this time, Your Honors, I would just – Isn't Shelton your best case? Shelton versus – Except on the force itself. Yes. He concluded that the force was unreasonable and then upheld the grant of qualified immunity. Shelton is our best case, Your Honor, with respect to the qualified immunity argument. We would still assert that the force was objective and reasonable, but with respect to qualified immunity, yes, that is our strongest case because there's nothing here that's quite on point that clearly puts Captain Church on notice that he was violating his rights. So with that, Your Honor, I would just thank you for your time and ask that you uphold the District Court's order in this matter. Thank you. Thank you. Increase that to two minutes. There's a lot going around here. Counsel, I'm going to go ahead and – I'm going to go ahead and start off with a question because I think it may be – based on earlier arguments, it may be key here. Tell us why this is a case where a dispute of material facts precludes summary judgment. I think that may be a very important issue here. I think you've got some problems on the clearly established prong of qualified immunity. Yes, and the Court just spent some time discussing the Shelton case where there was a couple different instances of force that the Court analyzed. There was the force that was used to handcuff the suspect while he was handcuffed, but I believe still partially struggling, and other officers stomped on his ankle and broke it. And the Court held that that use of force might have been excessive, if I'm remembering correctly, but that there was no clearly established law prior to Shelton. That was the focus of the decision? Yes. Went through the variety of force and then focused on – I think that was Stevens. I can't remember the name of the officer. But our panel – and this is a case in 2020. Right. Homed in and said that was unreasonable. He was so restrained at that point. Right. The stomp on the ankle, which broke his ankle, was unreasonable, and then went on to find or hold under the clearly established prong that it was not – it was in the hazy zone of excessive force cases. Right, because – How is this any different? I mean, the cuffing versus all the people that were holding down the plaintiff in Shelton, those seem to me to be on a par. The difference is in that the Shelton case, it was undisputed that even though Mr. Shelton was pinned, he was still fighting. And here we have disputed testimony suggesting that Mr. Westwater was, at most, offering passive resistance and refusing to get out of the car. I see my time as a – He was still resisting, but he was incapable of doing what, here, the officer thought, of headbutting, for example. Yes, Your Honor, I believe that's correct. My time has expired. Thank you so much. Thank you so much for your time today.